1
2
3
4
5
6
7
8          **UNITED STATES DISTRICT COURT**
9          **CENTRAL DISTRICT OF CALIFORNIA**
10

11   NARVIS NONNETTE,                    Case No. 5:20-cv-01218-CJC (MAA)
12                      Plaintiff,
                                         **MEMORANDUM DECISION AND**
13       v.                              **ORDER DISMISSING SECOND**
                                         **AMENDED COMPLAINT WITH**
14   GAVIN NEWSOM et al,                 **LEAVE TO AMEND**
15                      Defendants.
16

17   **I.    INTRODUCTION**

18          On June 16, 2020, the Court received a *pro se* putative class action lawsuit

19   filed by Plaintiffs Narvis Nonnette, William Roberts, and Richard Cooper, alleging

20   violations of their civil rights pursuant to 42 U.S.C. § 1983.  (Compl., ECF No. 1.)

21   After Plaintiff Roberts severed his claims on August 31, 2020 (ECF No. 14) and

22   Plaintiff Cooper was terminated on October 16, 2020 (ECF No. 21), the only

23   remaining Plaintiff in this case is Plaintiff Nonnette ("Plaintiff").  Plaintiff filed a

24   Request to Proceed Without Prepayment of Filing Fees on September 15, 2020 (ECF

25   No. 16), which the Court granted on September 18, 2020 (ECF No. 17).

26          On October 22, 2020, the Court screened and dismissed the Complaint with

27   leave to amend.  (Order Dismiss. Compl., ECF No. 22.)  On February 3, 2021, the

28   Court received Plaintiff's First Amended Complaint ("FAC").  (FAC, ECF No. 29.)

On February 19, 2021, the Court received a second document entitled "First Amended Complaint," which differed from the FAC and therefore was docketed as Plaintiff's Second Amended Complaint ("SAC").  (SAC, ECF No. 31.)

The Court has screened the SAC, and dismisses it with leave to amend for the reasons stated below.  No later than May 13, 2021, Plaintiff must either: (1) file a Third Amended Complaint; or (2) advise the Court that Plaintiff no longer intends to pursue this lawsuit.

## II.    PLAINTIFF'S ALLEGATIONS AND CLAIMS[1]

### A.    Defendants

The SAC is filed against: (1) Governor Gavin Newsom, governor of the State of California; (2) Doe #1; (3) Sheriff Chad Bianco, Sheriff of Riverside County; and (4) Doe #2 (each, a "Defendant" and collectively, "Defendants").  (SAC 3–4.)[2] Each Defendant is sued in his or her individual and official capacities.  (*Id*.)

### B.    Claim I

On March 19, 2020, Defendant Newsom issued an "illegal and unconstitutional" Executive Order to the state Judicial Council, giving them "carte blanche" discretion to make any modifications to legal practice and procedure necessary in order to continue conducting business.  (*Id*. at 6–7.)  Defendant Doe #1 assisted Defendant Newsom.  (*Id*. at 4.)  Plaintiff asserts that Defendant Newsom "seized control of the judicial and legislative branches of California government by empowering himself to govern by decree and suspend any laws that stand in his way."  (*Id*. at 9.)  Plaintiff contends that even if the language in the Emergency

---

[1] The Court summarizes Plaintiff's allegations and claims in the SAC, without opining on their veracity or make any findings of fact.

[2] Citations to pages in docketed documents reference those generated by CM/ECF.

Service Act ("Act") is interpreted as giving Defendant Newsom legislative powers, then the Act itself must be struck down as unconstitutional in violation of federal and state constitutions and under the separation of powers doctrine. (*Id*.)

Armed with the Executive Order from Defendant Newsom, the Judicial Council issued an "illegal and unconstitutional" statewide order on March 23, 2020 to the judicial branch, including all superior courts, continuing all criminal matters indefinitely and eliminating all statutory timelines for prosecuting a criminal case—specifically, the "10-court-day" and "60-calendar-day" rules. (*Id*. at 7–8.) As a result, the California court system was "closed" between March 19, 2020 to June 17, 2020 ("Closure"). (*Id*. at 8.)

Plaintiff asserts that by issuing the Executive Order, Defendant Newsom "ordered and set in motion" the deprivation of Plaintiff's rights, as follows. First, the Riverside County Superior Court ("Superior Court") held proceedings without Plaintiff present during the Closure, and without providing notice to Plaintiff or his counsel, in violation of the Sixth Amendment and Fourteenth Amendment Due Process Clause, and also in violation of Plaintiff's Sixth Amendment right to counsel. (*Id*. at 5, 8–9.) Second, the Superior Court summarily waived Plaintiff's Sixth Amendment right to a speedy trial without Plaintiff's consent. (*Id*. at 5, 9.) Third, Plaintiff was denied all privileges and immunities as a United States citizen. (*Id*. at 5–6, 9.) Fourth, Plaintiff was denied equal protection of the laws, in violation of the Fourteenth Amendment. (*Id*. at 6, 9.)

## C.    Claim II

Defendant Bianco ordered and set in motion "detaining and clustering of Plaintiff with other pre-trial detainees in small living spaces waiting for Coronavirus to explode." (*Id*. at 11.) On April 10, 2020, Defendant Bianco ordered a lockdown of all Riverside County Jail inmates, including Plaintiff, due to the Coronavirus, which remains in effect as of February 8, 2021. (*Id*. at 12.) Defendant Bianco failed

3

to put in place any type of safety measures that would slow or stop the spread of infection.  (*Id*.)  Defendant Bianco has turned Riverside County Jail into a "superspreader distribution center."  (*Id*. at 13.)  Defendant Doe #2 assisted Defendant Bianco.  (*Id*. at 4.)

Defendant Bianco has not followed this Court's order to provide social distancing.  (*Id*. at 13.)  On court days, inmates are: packed into holding cells to await transport to the court; chained up and packed in "side by side like sardines" in the bus; unloaded from the buses and packed into court holding cells; and are only socially-distanced once they enter the courtroom.  (*Id*.)  Dorms consist of ten-man and twenty-man units and bunk beds are space approximately twenty inches apart and twenty inches above.  (*Id*.)  Inmates are ordered to their beds at 11 p.m. and program resumes the following day at 8 a.m., so inmates are forced to spend nine hours each day confined to their beds in close proximity with each other.  (*Id*. at 14.)

On October 28, 2020, Plaintiff was moved from cell E1-18 to E3-56.  (*Id*.)  Plaintiff did not request a cell move.  (*Id*.)  Plaintiff's new cellmate was Scott Lapresle.  (*Id*. at 15.)  That night Plaintiff could not sleep because Mr. Lapresle was breathing and snoring so loudly it sounded like he was dying.  (*Id*.)  When Plaintiff asked Mr. Lapresle about his breathing the next morning, Mr. Lapresle said it was due to growths on his heart.  (*Id*.)  A few days later, medical staff came to give the over fifty inmates Coronavirus tests, which are given every two weeks.  (*Id*.)  Medical staff gave Plaintiff a Coroavirus test, but did not ask Mr. Lapresle to test.  (*Id*.)  When Plaintiff asked Mr. Lapresle why he did not take the test, Mr. Lapresle said they "they no [sic] better than to ask him."  (*Id*.)

On November 8, 2020, Mr. Lapresle was breathing erratically and struggling to get air, wheeled himself to the nurses' station, and was rushed to an outside hospital at Moreno Valley.  (*Id*. at 15–16.)  At 11:30 p.m. that night, Plaintiff was called to the nurses' station and informed that Mr. Lapresle had a serious case of Coronavirus and was on a respirator and that Plaintiff had to test for the virus.  (*Id*.

4

at 16.)  Plaintiff was tested and placed into quarantine; the test came back positive five days later.  (*Id*.)  Plaintiff was transferred to Banning County Jail for an additional seventeen days of quarantine and treatment.  (*Id*.)  Plaintiff asserts that the unrequested cell move from a Coronavirus-free cell to a Coronavirus-infected cell with Mr. Lapresle repeatedly refusing the test demonstrates a deliberate indifference to Plaintiff's safety and well-being and is punishment without due process of law. (*Id*.)

Plaintiff asserts a violation of the Eighth Amendment right against cruel and unusual punishment and Fifth Amendment guarantee of due process.  (*Id*. at 11.)

### D.    Relief Requested

Plaintiff seeks: (1) damages in excess of $1,000,000; (2) a declaration affirming that a state governor cannot suspend Plaintiff's constitutional rights as a United States citizen for any reason, "Coronavirus or otherwise"; (3) a declaration affirming that a state governor cannot steal liberty without due process of law for any reason "pandemic or otherwise"; (4) a declaration that a state governor cannot change the law, and that only the legislature can; and (5) a preliminary injunction staying all state court proceedings pending federal court adjudication of this case. (*Id*. at 17–18.)

## III.   LEGAL STANDARD

Federal courts must conduct a preliminary screening of any case in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity (28 U.S.C. § 1915A), or in which a plaintiff proceeds *in forma pauperis* (28 U.S.C. § Section 1915(e)(2)(B)).  The court must identify cognizable claims and dismiss any complaint, or any portion thereof, that is: (1) frivolous or malicious, (2) fails to state a claim upon which relief may be granted, or (3) seeks ///

monetary relief from a defendant who is immune from such relief.  28 U.S.C. §§ 1915(e)(2)(B), 1915A(b).

When screening a complaint to determine whether it fails to state a claim upon which relief can be granted, courts apply the Federal Rule of Civil Procedure[3] 12(b)(6) ("Rule 12(b)(6)") standard.  *See Wilhelm v. Rotman*, 680 F.3d 1113, 1121 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § Section 1915A); *Watison v. Carter*, 668 F.3d 1108, 1112 (9th Cir. 2012) (applying the Rule 12(b)(6) standard to 28 U.S.C. § 1915(e)(2)(B)(ii)).  To survive a Rule 12(b)(6) dismissal, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Although "detailed factual allegations" are not required, "an unadorned, the-defendant-unlawfully-harmed-me accusation"; "labels and conclusions"; "naked assertion[s] devoid of further factual enhancement"; and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements" do not suffice.  *Id*.  "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory."  *Hartmann v.  Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1122 (9th Cir. 2013) (quoting *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008)).

In reviewing a Rule 12(b)(6) motion to dismiss, courts will accept factual allegations as true and view them in the light most favorable to the plaintiff.  *Park v. Thompson*, 851 F.3d 910, 918 (9th Cir. 2017).  Moreover, where a plaintiff is appearing *pro se*, particularly in civil rights cases, courts construe pleadings liberally

---

[3] All further references to "Rule" are to the Federal Rules of Civil Procedure.

and afford the plaintiff any benefit of the doubt. *Wilhelm*, 680 F.3d at 1121. "If there are two alternative explanations, one advanced by defendant and the other advanced by plaintiff, both of which are plausible, plaintiff's complaint survives a motion to dismiss under Rule 12(b)(6)." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). However, the liberal pleading standard "applies only to a plaintiff's factual allegations." *Neitzke v. Williams,* 490 U.S. 319, 330 n.9 (1989), *superseded by statute on other grounds*, 28 U.S.C. § 1915. Courts will not "accept any unreasonable inferences or assume the truth of legal conclusions cast in the form of factual allegations." *Ileto v. Glock Inc.,* 349 F.3d 1191, 1200 (9th Cir. 2003). In giving liberal interpretations to complaints, courts "may not supply essential elements of the claim that were not initially pled." *Chapman v. Pier 1 Imps. (U.S.), Inc.*, 631 F.3d 939, 954 (9th Cir. 2011) (quoting *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992)).

## IV.   DISCUSSION

### A.   Exhaustion of Available Administrative Remedies Is Mandatory

As part of the Prison Litigation Reform Act of 1995 ("PLRA"), Congress amended and strengthened the requirement that prisoners pursuing civil rights claims under Section 1983 or another Federal statute must first exhaust available administrative remedies. *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to prison conditions under [Section 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes . . . ." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). The PLRA's exhaustion requirement is mandatory, *Jones v. Bock*, 549 U.S. 199, 211 (2007), but "hinges on the 'availab[ility]' of administrative remedies: An inmate, that is, must exhaust available remedies, but need not exhaust

1    unavailable ones," *Ross v. Blake*, 136 S. Ct. 1850, 1858 (2016) (alteration in

2    original).  Exhaustion cannot be satisfied by exhausting available remedies during

3    the course of the litigation.  *McKinney v. Carey*, 311 F.3d 1198, 1199–1200 (9th Cir.

4    2002).  If a prisoner has not completed his or her available administrative remedies

5    before filing a complaint, the court must dismiss the action without prejudice.  *Id.* at

6    1200–01.

7        Neither the Complaint nor SAC disclose whether Plaintiff exhausted

8    administrative remedies before filing this lawsuit.  (*See generally* Compl., SAC.)

9    The FAC—which the Court never screened because the SAC was received shortly

10   after the FAC was submitted—states that Plaintiff did not file a grievance

11   concerning the issues in the lawsuit, and did not complete the grievance procedure.

12   (FAC 2.)  Specifically, the FAC states: "The issues in this Complaint are

13   constitutional questions of law and deal with an emergency pandemic and life and

14   death situations . . . .  A grievance has nothing to do with state court proceedings."

15   (*Id.*)

16       "Failure to exhaust under the PLRA is 'an affirmative defense the defendant

17   must plead and prove.'"  *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014)

18   (quoting *Jones*, 549 U.S. at 204).  Defendants have not yet been served and have not

19   met their burden "to prove that there was an available administrative remedy, and

20   that the prisoner did not exhaust that available remedy."  *See id.* at 1172.  The Court

21   cautions Plaintiff that if he did not exhaust available administrative remedies before

22   filing this lawsuit, the lawsuit will have to be dismissed without prejudice, even if

23   Plaintiff later exhausts administrative remedies.  *See McKinney*, 311 F.3d at 1200–

24   01.  Exhaustion is required even if Plaintiff seeks relief that is not available in

25   grievance proceedings.  *See Porter*, 534 U.S. at 524.  There is no exception to the

26   PLRA's administrative exhaustion requirement for alleged threat of potential harm.

27   *See, e.g., Wells v. CDCR*, No. 2:18-cv-0970 WBS KJN P, 2018 U.S. Dist. LEXIS

28   96980, at *5 (E.D. Cal. June 8, 2018) (rejecting argument that plaintiff was exempt

from administratively exhausting claims due to "emergency complaint of potential harm" because "there is no exception to the administrative exhaustion requirement based on an alleged threat of potential harm"); *Hoffman v. Palagummi*, No. 2:16-cv-3030-TLN-EFB P, 2019 U.S. Dist. LEXIS 23741, at *9 (E.D. Cal. Feb. 12, 2019) ("[T]he PLRA makes no provision for an 'imminent danger' or other emergency exception to its exhaustion requirements.").

If Plaintiff did not exhaust his available administrative remedies prior to filing this lawsuit, he may voluntarily dismiss this lawsuit and re-file it after completing mandatory exhaustion (a Notice of Voluntary Dismissal form is attached).

## B.   Plaintiff Fails to State Any Section 1983 Claims

### 1.   Legal Standard

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . ., subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law . . . .

42 U.S.C. § 1983.  "Section 1983 does not create any substantive rights, but is instead a vehicle by which plaintiffs can bring federal constitutional and statutory challenges to actions by state and local officials."  *Anderson v. Warner*, 451 F.3d 1063, 1067 (9th Cir. 2006).  "The purpose of §1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails."  *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).  "To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).

9

Liability under Section 1983 cannot be established solely on a theory of *respondeat superior* based on the unconstitutional conduct of subordinates. *See Iqbal*, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of *respondeat superior*."); *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978) (finding no vicarious liability for municipalities under Section 1983). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844 F.2d 628, 633 (9th Cir. 1998). The requisite causal connection can be established when a person (1) "does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation"; or (2) "set[s] in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Lacey v. Maricopa County*, 693 F.3d 896, 915 (9th Cir. 2012) (en banc) (quoting *Johnson v. Duffy*, 588 F.2d 740, 743–44 (9th Cir. 1978)). "Even if a supervisory official is not directly involved in the allegedly unconstitutional conduct, '[a] supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision, or control of his subordinates; for his acquiescence in the constitutional deprivation; or for conduct that showed a reckless or callous indifference to the rights of others.'" *Keates v. Koile*, 883 F.3d 1228, 1243 (9th Cir. 2018) (alteration in original) (quoting *Starr*, 652 F.3d at 1208).

## 2. Plaintiff Fails to State a Claim Against Doe Defendants #1–2

"[C]onclusory and/or speculative allegations about a Doe Defendant's possible or suspected involvement in the constitutional deprivations alleged will not support a claim against that individual and will result in dismissal." *Merritt v. City of Laguna Beach*, No. SACV 19-2437-CJC (KS), 2020 U.S. Dist. LEXIS 119814, at

10

*11 (C.D. Cal. May 19, 2020).  The SAC names two Doe Defendants (SAC 4), but does not allege any specific acts of wrongdoing by either Defendant Doe #1 or #2 (*see generally id*.).  The only allegation about Defendant Doe #1 is that he or she "assisted Defendant Newsom by setting in motion a series of acts that he/she should have known would cause Plaintiff a constitutional injury," while the only allegation regarding Doe Defendant #2 is that he or she "assisted Defendant Bianco."  (*Id*. at 4.)  These speculative allegations are insufficient to state a claim against Defendants Doe #1–2.  *See Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level . . . .").

"As a general rule, the use of 'John Doe' to identify a defendant is not favored."  *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).  However, there are circumstances where the identity of an alleged defendant will not be known before filing a complaint.  In such situations, plaintiffs should be given an opportunity through discovery to identify the unknown defendants.  *Id*.  Here, however, it appears that Defendants Doe #1–2 may be "merely placeholders representing Plaintiff's misguided attempt to preserve the possibility of adding additional defendants in the future."  *Merritt*, 2020 U.S. Dist. LEXIS 119814, at *11.  The proper method of adding new parties in federal court is Federal Rule of Civil Procedure 15.  *Fifty Assoc. v. Prudential Ins. Co. of Am.*, 446 F.2d 1187, 1191 (9th Cir. 1970); *Coleman v. Fed. Intermediate Credit Bank*, 600 F. Supp. 97, 101 (D. Or. 1984).

For these reasons, Plaintiff fails to state any claims against Defendants Doe #1–2.  If Plaintiff includes Doe Defendants in any amended complaint, he must correct these deficiencies or risk their dismissal.

///

///

///

///

3.   <u>Plaintiff Fails to State a Claim Against Defendant Newsom in his Individual Capacity</u>

a.   *Sixth Amendment Rights to Speedy Trial, Presence, and Counsel; Fourteenth Amendment Right to Due Process*

"The Sixth Amendment provides that 'in all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial.'" *United States v. Sandoval*, 990 F.2d 481, 482 (9th Cir. 1993)) (quoting U.S. Const. amend. VI).  The Sixth Amendment also provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." *Nordstrom v. Ryan*, 762 F.3d 903, 909 (9th Cir. 2014) (alteration in original) (quoting U.S. Const. amend. VI).  The Sixth Amendment's Confrontation Clause guarantees "the accused's right to be present in the courtroom at every stage of his trial." *Illinois v. Allen*, 397 U.S. 337, 338 (1970).  The constitutional right to presence is "protected by the Due Process Clause in some situations where the defendant is not actually confronting witnesses or evidence against him." *United States v. Gagnon*, 470 U.S. 522, 526 (1985).

Plaintiff alleges that Defendant Newsom violated his Sixth Amendment and Fourteenth Amendment Due Process rights by issuing an Executive Order that gave the state Judicial Council "carte blanche" discretion to make any modifications to legal practice and procedure necessary in order to continue conducting business. (SAC 7.)  Plaintiff asserts that as a result of Defendant Newsom's Executive Order, the Judicial Council continued all criminal matters and there was a Closure of California courts between March 19, 2020 to June 17, 2020.  (*Id*. at 8.)  Plaintiff blames Defendant Newsom for the Superior Court holding proceedings without Plaintiff during the Closure without providing notice to Plaintiff or his counsel, and for the Superior Court waiving Plaintiff's Sixth Amendment right to a speedy trial without his consent.  (*Id*. at 5, 8–9.)

///

12

Plaintiff's Sixth Amendment and Fourteenth Amendment Due Process claims against Defendant Newsom fail for three reasons.  First, the SAC does not allege a non-speculative causal connection between Defendant Newsom's only action alleged in the SAC—issuing an Executive Order empowering the state Judicial Council to respond to COVID-19—and Plaintiff's constitutional harms.  *See Twombly*, 550 U.S. at 556 (explaining that Rule 8 requires that "factual allegations must be enough to raise a right to relief above the speculative level").  Defendant Newsom cannot be held responsible under a theory of *respondeat superior* for the actions of others.  *See Iqbal*, 556 U.S. at 676.  There is nothing in the SAC connecting Defendant Newsom to the Superior Court's alleged infringements of Plaintiff's constitutional rights other than "labels and conclusion" and "'naked assertion[s]' devoid of 'further factual enhancement.'"  *See Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  "A plaintiff must allege facts, not simply conclusions, that show an individual was personally involved in the deprivation of his civil rights."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

Second, because Plaintiff has a pending state criminal proceeding, the Court would have to stay Plaintiff's Sixth Amendment and Fourteenth Amendment Due Process claims in accordance with *Younger* abstention until the end of Plaintiff's state criminal prosecution.  *See Gilbertson v. Albright*, 381 F.3d 965, 968 (9th Cir. 2004).  Under *Younger v. Harris*, 401 U.S. 37 (1971), a federal court generally must abstain from hearing a case that would enjoin or otherwise interfere with ongoing state criminal proceedings.  *Younger* abstention is required if the following elements are met: (1) state proceedings are ongoing; (2) the state proceedings implicate important state interests; (3) the state proceedings provide the federal litigant an adequate opportunity to raise the federal claims; and (4) the federal proceedings would interfere with the state proceedings in a way that *Younger* disapproves.  *San Jose Silicon Valley Chamber of Com. Pol. Action Comm. v. City of San Jose*, 546 F.3d 1087, 1092 (9th Cir. 2008).  A narrow exception to *Younger* abstention exists,

but only "in cases of proven harassment or prosecutions undertaken by state officials in bad faith without hope of obtaining a valid conviction and perhaps in other extraordinary circumstances where irreparable injury can be shown is federal injunctive relief against pending state prosecutions appropriate." *Perez v. Ledesma*, 401 U.S. 82, 85 (1971); *see also Middlesex County Ethics Comm. v. Garden State Bar Ass'n.*, 457 U.S. 423, 435 (1982).

Each of the *Younger* elements is met in this case.  First, Plaintiff's state criminal proceeding is ongoing, as stated in the SAC.  (*See generally* SAC.) Second, the state criminal proceedings implicate important state interests.  *See Kelly v. Robinson*, 479 U.S. 36, 49 (1986) ("[T]he States' interest in administering their criminal justice systems free from federal interference is one of the most powerful of the considerations that should influence a court considering equitable types of relief.").  Third, the state proceedings provide Plaintiff an adequate opportunity to raise his claims, including trial and state appellate review.  *See Pennziol Co. v. Texaco, Inc.*, 481 U.S. 1, 15 (1987) (holding that federal courts should assume that state procedures will afford adequate opportunity for consideration of constitutional claims "in the absence of unambiguous authority to the contrary").  Fourth, Plaintiff's Sixth Amendment and Fourteenth Amendment Due Process claims threaten to interfere with the state criminal proceedings in a manner that *Younger* disapproves.  *See Baffert v. Cal. Horse Racing Bd.*, 332 F.3d 613, 617 (9th Cir. 2003) (concluding that the fact that a state proceeding is ongoing would necessarily mean interference by a federal court).  Furthermore, Plaintiff has not clearly alleged a basis for an exception to the application of *Younger* abstention.  Thus, the Court is constrained to stay Plaintiff's claims pursuant to *Younger*.

Finally, Plaintiff's Sixth Amendment claims are not cognizable in a Section 1983 action at this time for a separate reason.  Federal law provides two main avenues to relief on complaints related to imprisonment: (1) a petition for habeas corpus, 28 U.S.C. § 2254, and (2) a complaint under Section 1983.  *Muhammed v.*

1   *Close*, 540 U.S. 749, 750 (2004) (per curiam).  "Challenges to the validity of any

2   confinement or to particulars affecting its duration are the province of habeas

3   corpus; requests for relief turning on circumstances of confinement may be

4   presented in a § 1983 action."  *Id*. (citations omitted).  Habeas is the exclusive

5   vehicle for claims brought by state prisoners that fall within the core of habeas.

6   *Nettles v. Grounds*, 830 F.3d 922, 927 (9th Cir. 2016).  A Section 1983 action

7   challenging a conviction or sentence does not accrue and cannot be pursued until the

8   underlying conviction or sentence is invalidated.  *Heck v. Humphrey*, 512 U.S. 477,

9   489–90 (1994); *Rosales-Martinez v. Palmer*, 753 F.3d 890, 896 (9th Cir. 2014).

10        Here, Plaintiff's Sixth Amendment and Fourteenth Amendment Due Process

11   claims would necessarily imply the invalidity of Plaintiff's conviction, and

12   therefore cannot be brought in a Section 1983 action until his underlying conviction

13   or sentence is invalidated.  *See, e.g., Valdez v. Rosenblum*, 302 F.3d 1039, 1049 (9th

14   Cir. 2002) (barring under *Heck* a Sixth Amendment right to counsel claim because

15   it would necessarily imply the invalidity of plaintiff's conviction); *Peterson v.*

16   *County of Okanogan*, No. CV-07-0394-EFS, 2008 U.S. Dist. LEXIS 140125, at *6

17   (E.D. Wash. Mar. 28, 2008) ("The *Heck* bar applies because, if the Court

18   determined that a speedy trial violation had occurred, this ruling would 'necessarily

19   imply the invalidity of [Plaintiff's] conviction.'") (quoting *Heck*, 512 U.S. at 487);

20   *Langrock v. County of Ventura*, No. CV 17-01200 BRO (RAO), 2017 U.S. Dist.

21   LEXIS 225900, at *13–14 (C.D. Cal. May 19, 2017) ("[I]f this court were to enter a

22   judgment based on a determination that [Plaintiff's] alleged absence[] made his

23   criminal proceedings fundamentally unfair, it would be implying the invalidity of

24   his criminal proceedings.  Such a claim is properly asserted in a habeas corpus

25   petition, not in a section 1983 civil rights action.") (internal citation and quotation

26   marks omitted)).

27        For these reasons, the SAC fails to state any Sixth Amendment and Fourteenth

28   Amendment Due Process claims against Defendant Newsom.  If Plaintiff includes

these claims in any amended complaint, they will be subject to *Younger* abstention. Only after the underlying criminal case is concluded and Plaintiff can demonstrate that his underlying conviction has been overturned will such claims be cognizable under Section 1983.

### b.    *Fourteenth Amendment Equal Protection*

"The Equal Protection Clause of the Fourteenth Amendment provides that '[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws.'" *Angelotti Chiropractic v. Baker*, 791 F.3d 1075, 1085 (9th Cir. 2015) (alteration in original) (quoting U.S. Const. amend. XIV, § 1).  "The Equal Protection Clause requires the State to treat all similarly situated people equally." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1123 (9th Cir. 2013). "This does not mean, however, that all prisoners must receive identical treatment and resources." *Id.*  A plaintiff can state an equal protection claim:  (1) by alleging "facts plausibly showing that 'the defendants acted with an intent or purpose to discriminate against [them] based upon membership in a protected class," *id.* (alteration in original) (quoting *Thornton v. City of St. Helens*, 425 F.3d 1158, 1166 (9th Cir. 2005)); or (2) as a "class of one" by alleging that plaintiff has "been intentionally treated differently from others similarly situated and that there is no rational basis for the treatment," *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000).

Here, Plaintiff alleges that Defendant Newsom ordered and set in motion the deprivation of Plaintiff's right to equal protection of the law.  (SAC 6, 9.)  These allegations do not state a claim because they are "labels and conclusions" and "devoid of 'further enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  In addition, nowhere in the SAC does Plaintiff identify his protected class.  (*See generally id.*)  Prisoners are not a suspect class for equal protection purposes, *Rodriguez v. Cook*, 169 F.3d 1176, 1179 (9th Cir. 1999), and

16

1   Plaintiff does not allege that Defendants treated Plaintiff differently due to a suspect

2   distinction, *see New Orleans v. Dukes*, 427 U.S. 297, 303 (1976) (noting that

3   "suspect distinctions such as race, religion, or alienage" are protected classes for

4   equal protection purposes).  Moreover, Plaintiff also does not include any allegations

5   from which it reasonably could be inferred that Defendant Newsom acted with an

6   intent or purpose to discriminate against Plaintiff *because of* his membership in a

7   protected class.  *See Serrano v. Francis*, 345 F.3d 1071, 1082 (9th Cir. 2003)

8   ("Intentional discrimination means that a defendant acted at least in part *because of* a

9   plaintiff's protected status.") (quoting *Maynard v. City of San Jose*, 37 F.3d 1396,

10  1404 (9th Cir. 1994)).  Finally, Plaintiff does not allege any facts to support the

11  conclusion that Defendant Newsom intentionally treated Plaintiff differently from

12  others similarly situated without any rational basis for the treatment.  *See Village of*

13  *Willowbrook*, 528 U.S. at 564.

14       For these reasons, Plaintiff fails to state a Fourteenth Amendment equal

15  protection claim against Defendant Newsom.  If Plaintiff includes a Fourteenth

16  Amendment equal protection claim in any amended complaint, he must cure these

17  deficiencies or risk its dismissal.

18

19                    c.    *Privileges and Immunities Clause*

20       The Privileges and Immunities Clause provides that "[t]he Citizens of each

21  State shall be entitled to all Privileges and Immunities of Citizens in the several

22  States."  U.S. Const. art. IV, § 2, cl. 1.  "This clause seeks to prevent 'a state from

23  discriminating against citizens of other states in favor of its own.'"  *Nat'l Ass'n for*

24  *the Advancement of Multijurisdiction Prac. v. Berch*, 973 F. Supp. 2d 1082, 1110

25  (D. Ariz. 2013) (quoting *Hague v. C.I.O.*, 307 U.S. 496, 511 (1939)).

26  "Discrimination on the basis of out-of-state residency is a necessary element for a

27  claim under the Privileges and Immunities Clause."  *Gianni v. Real*, 911 F.2d 354,

28  357 (9th Cir. 1990).

Here, Plaintiff alleges that Defendant Newsom ordered the suspension of Plaintiff's privileges and immunities.  (SAC 6, 9.)  These allegations cannot state a claim because they are conclusory and "devoid of 'further enhancement.'"  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555, 557).  Furthermore, there are no allegations to suggest that the Privileges and Immunities Clause even applies to this lawsuit, as there are no allegations from which it reasonably could be inferred that Defendant Newsom discriminated against Plaintiff on the basis of his out-of-state residency.  *See Gianni*, 911 F.2d at 357 ("The absence of any disparate treatment of nonresidents is fatal to [plaintiff's] claims.")  Indeed, Plaintiff does not even allege that he is an out-of-state resident.  (*See generally* SAC.)

For these reasons, Plaintiff fails to state a privileges and immunities claim against Defendant Newsom.  If Plaintiff includes a privileges and immunities claim in any amended complaint, he must cure these deficiencies or risk its dismissal.

4. <u>Plaintiff Fails to State a Claim Against Defendant Newsom in his Official Capacity</u>

A suit against a defendant in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent.'"  *Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (citation omitted) (quoting *Monell*, 436 U.S. at 690 n.55).  Plaintiff alleges that Defendant Newsom is the Governor of California.  (SAC 3.)  Thus, the official capacity claim against Defendant Newsom is treated as a claim against the State of California.  *See Leer*, 844 F.2d at 631–32 (explaining that a lawsuit against state prison officials in their official capacities was a lawsuit against the state).

"The Eleventh Amendment prohibits federal courts from hearing suits brought against an unconsenting state."  *Brooks v. Sulphur Springs Valley Elec. Coop.*, 951 F.2d 1050, 1053 (9th Cir. 1991).  "[A]n entity with Eleventh Amendment immunity is not a 'person' within the meaning of § 1983."  *Howlett v. Rose*, 496 U.S. 356, 365

18

(1990) (discussing *Will v. Mich. Dep't of State Police*, 491 U.S. 58 (1989)).  "State immunity extends to state agencies and to state officers, who act on behalf of the state and can therefore assert the state's sovereign immunity." *Nat. Res. Def. Council v. Cal. Dep't of Transp.*, 96 F.3d 420, 421 (9th Cir. 1996)).  "Therefore, state officials sued in their official capacities . . . are not 'persons' within the meaning of § 1983 and are therefore generally entitled to Eleventh Amendment immunity." *Flint v. Dennison*, 488 F.3d 816, 825 (9th Cir. 2007).  There are only three exceptions to Eleventh Amendment immunity: (1) "a state may waive its Eleventh Amendment defense"; (2) "Congress may abrogate the States' sovereign immunity by acting pursuant to a grant of constitutional authority"; and (3) "under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a suit against a state official when that suit seeks . . . prospective injunctive relief." *Douglas v. Cal. Dep't of Youth Auth.*, 271 F.3d 812, 817–18 (9th Cir. 2001) (alteration in original) (quotation marks and citations omitted).  The State of California has not waived its Eleventh Amendment immunity with respect to Section 1983 claims, and the Supreme Court has held that Section 1983 was not intended to abrogate a State's Eleventh Amendment immunity.  *Brown v. Cal. Dep't of Corr.*, 554 F.3d 747, 752 (9th Cir. 2009).

In *Ex parte Young*, 209 U.S. 123 (1908), the Supreme Court "provided a narrow exception to Eleventh Amendment immunity for certain suits seeking declaratory and injunctive relief against unconstitutional actions taken by state officers in their official capacities." *Rounds v. Or. State Bd. of Higher Educ.*, 166 F.3d 1032, 1036 (9th Cir. 1999).  "Under the *Ex parte Young* doctrine, a plaintiff may maintain a suit for *prospective relief* against a state official in his official capacity, when that suit seeks to correct an ongoing violation of the Constitution or federal law." *Cardenas v. Anzai*, 311 F.3d 929, 934–35 (9th Cir. 2002).  To state an official capacity claim against state officials, a plaintiff "is not required to allege a named official's personal involvement in the acts or omissions constituting the

19

alleged constitutional violation." *Hartmann v. Cal. Dep't of Corr. & Rehab.*, 707 F.3d 1114, 1127 (9th Cir. 2013).  Rather, a plaintiff need only "identify a practice, policy, or procedure that animates the constitutional violation at issue," *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 865 (9th Cir. 2016) (citing *Hafer v. Melo*, 502 U.S. 21, 25 (1991)), and "name the official within the entity who can appropriately respond to injunctive relief," *Hartmann*, 707 F.3d at 1127.  In addition, a plaintiff must allege an ongoing violation of federal law and seek relief that is properly characterized as prospective.  *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002).

Here, to the extent that Plaintiff seeks prospective relief, the SAC does not allege any State of California practice, policy, or procedure that animates any constitutional violations.  (*See generally* SAC.)  Furthermore, for the reasons discussed in Section IV.B.3, *supra*, the SAC does not state a claim for violation of the Sixth Amendment, Fourteenth Amendment Due Process Clause, Fourteenth Amendment Equal Protection Clause, or Privileges and Immunities Clause.  Thus, the SAC does not state any claims falling within the *Ex Parte Young* exception to Eleventh Amendment immunity.

For these reasons, Plaintiff fails to state any claims against Defendant Newsom in his official capacity.  If Plaintiff includes official capacity claims for damages against Defendant Newsom in any amended complaint, they will be subject to dismissal.  If Plaintiff files an amended complaint with official capacity claims against Defendants Newsom for prospective relief, he must correct these deficiencies or risk their dismissal.

5.    Plaintiff Fails to State a Fourteenth Amendment Claim Against Defendant Bianco in his Individual Capacity

Plaintiff asserts that Defendant Bianco violated his Eighth Amendment right against cruel and unusual punishment and his Fifth Amendment due process rights.

(SAC 11.)  However, "[i]nmates who sue prison officials for injuries suffered while in custody may do so under the Eighth Amendment's Cruel and Unusual Punishment clause or, if not yet convicted, under the Fourteenth Amendment's Due Process Clause."  *Castro v. County of Los Angeles*, 833 F.3d 1060, 1067–68 (9th Cir. 2016).  Furthermore, the Due Process of the Fifth Amendment applies only to actions of the federal government, while the Fourteenth Amendment prohibits deprivations of due process by the several States.  *Castillo v. McFadden*, 399 F.3d 993, 1002 n.5 (9th Cir. 2005).  Because Plaintiff is a pretrial detainee and is not alleging due process violations by the federal government, the Court will examine Plaintiff's claim against Defendant Bianco pursuant to the Fourteenth Amendment Due Process Clause.  *See Sagana v. Tenorio*, 384 F.3d 731, 736–37 (9th Cir. 2004) ("A party need not plead specific legal theories in the complaint, so long as the other side receives notice as to what is at issue in the case.") (internal quotation marks omitted)).

The Due Process Clause of the Fourteenth Amendment protects pretrial detainees—who have not been adjudged guilty of any crime—from any conditions or restrictions that amount to punishment.  *Bell v. Wolfish*, 441 U.S. 520, 535–37 (1979); *see also Valdez v. Rosenbaum*, 302 F.3d 1039, 1045 (9th Cir. 2002) ("Pretrial detainees have a substantive due process right against restrictions that amount to punishment.").  "This right is violated if restrictions are 'imposed for the purpose of punishment.'"  *Valdez*, 302 F.3d at 1045 (quoting Bell, 441 U.S. at 535).  Unless there is evidence of intent to punish, those conditions or restrictions that are reasonably related to legitimate penological objectives do not violate pretrial detainees' right to be free from punishment.  *See Bell*, 441 U.S. at 538–39.  Prison and jail administrators are "accorded wide-ranging deference in the adoption and execution of policies and practices that in their judgment are needed to preserve internal order and discipline and to maintain institutional security."  *Id.* at 547.
///

A pretrial detainee's Fourteenth Amendment failure-to-protect claim requires the following elements: (1) the defendant made an intentional decision regarding the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro*, 833 F.3d at 1070. With respect to the third element, the defendant's conduct must be objectively unreasonable, a determination that will turn on the facts and circumstances of each particular case. *Id*. There mere lack of due care does not violate the Fourteenth Amendment. *Gordon v. County of Orange*, 888 F.3d 1118, 1125 (9th Cir. 2018); *Daniels v. Williams*, 474 U.S. 327, 330–31 (1986) (holding that the Due Process clause is not violated by negligence). A plaintiff must "prove more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

Here, the SAC makes general allegations about Riverside County Jail's shortcomings in light of COVID-19: lack of social distancing, moving Plaintiff to another cell, and lack of COVID-19 testing of Plaintiff's cellmate. (*See* SAC 11–16.) These general allegations—devoid of any specific factual allegations regarding Defendant Bianco—do not state a Fourteenth Amendment claim against Defendant Bianco. *See, e.g., Leeper v. County of Sacramento*, No. 2:20-cv-0960 AC P, 2020 U.S. Dist. LEXIS 120008, at *6 (E.D. Cal. July 8, 2020) (holding that general allegations that jail was not meeting CDC recommendations in responding to COVID-19, including "social distancing, masks, uncleanly environment and . . . without any medical testing being done" was not specific enough to state cognizable Fourteenth Amendment claim). "A cognizable claim must specifically identify defendant's challenged conduct, explain how that conduct is unreasonable under the

22

circumstances, and describe how defendant's conduct has harmed plaintiff." *Gay v. California*, No. 2:20-cv-1276 AC P, 2020 U.S. Dist. LEXIS 120007, at *6 (E.D. Cal. July 8, 2020) (holding that complaint, premised solely on plaintiff's alleged inability to socially distance from other detainees during COVID-19 pandemic, does not state a cognizable Fourteenth Amendment claim). The SAC does not include any allegations about Defendant Bianco's specific acts or failures beyond general conclusory statements. *See Iqbal*, 556 U.S. at 678 (explaining that "labels and conclusions" and "naked assertion[s] devoid of further factual enhancement" are insufficient to state a claim). As explained in Section IV.B.1, *supra*, Plaintiff cannot be held responsible for the actions of others under a theory of *respondeat superior*. *See Iqbal*, 556 U.S. at 676.

For these reasons, Plaintiff fails to state a Fourteenth Amendment claim against Defendant Bianco in his individual capacity. If Plaintiff files an amended complaint with this claim, he must correct its deficiencies or risk its dismissal.

### 6.   Plaintiff Fails to State a Fourteenth Amendment Claim Against Defendant Bianco in his Official Capacity

"[A]n official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky*, 473 U.S. at 166. Plaintiff alleges that Defendant Bianco is Sheriff of Riverside County. (SAC 4.) Thus, the official capacity claims against Defendant Bianco are treated as claims against Riverside County. *See Mendiola-Martinez v. Arpaio*, 836 F.3d 1239, 1250 (9th Cir. 2016) (explaining that claims against county sheriff sued in his official capacity are treated as claims against the county).

"A municipality or other local government [including counties] may be liable under [Section 1983] if the governmental body itself 'subjects' a person to a deprivation of rights or 'causes' a person 'to be subjected' to such deprivation." *Connick v. Thompson*, 563 U.S. 51, 60 (2011) (citing *Monell*, 436 U.S. at 692).

"[A] municipality can be found liable under § 1983 only where the municipality *itself* causes the constitutional violation at issue." *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). "A municipality cannot be held liable *solely* because it employs a tortfeasor—or in other words, a municipality cannot be held liable under Section 1983 on a *respondeat superior* theory." *Monell*, 436 U.S. at 691.

"In order to establish municipal liability, a plaintiff must show that a 'policy or custom' led to the plaintiff's injury." *Castro*, 833 F.3d at 1073 (quoting *Monell*, 436 U.S. at 694). "Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." *Connick*, 563 U.S. at 61. A rule or regulation "promulgated, adopted, or ratified by a local governmental entity's legislative body" constitutes a municipal policy. *Thompson v. City of Los Angeles*, 885 F.2d 1439, 1443 (9th Cir. 1989), *overruled on other grounds by Bull v. City & County of San Francisco*, 595 F.3d 964 (9th Cir. 2010) (en banc). "A policy has been defined as 'a deliberate choice to follow a course of action . . . made from among various alternatives by the official or officials responsible for establishing final policy with respect to the subject matter in question.'" *Waggy v. Spokane County Washington*, 594 F.3d 707, 713 (9th Cir. 2010) (alteration in original) (quoting *Long v. County of Los Angeles*, 442 F.3d 1178, 1185 (9th Cir. 2006)). "[I]n addition to an official policy, a municipality may be sued for constitutional deprivations visited pursuant to governmental custom even though such custom has not received formal approval through the [governmental] body's official decisionmaking channels." *Navarro v. Block*, 72 F.3d 712, 714 (9th Cir. 1996) (quotations omitted) (citing *Monell*, 436 U.S. at 690–91). However, liability for a custom will attach only if a plaintiff pleads that his or her injury resulted from a "permanent and well-settled" practice. *Thompson*, 885 F.2d at 1444. Allegations of random acts or isolated events are insufficient to establish a municipal custom. *Navarro*, 72 F.3d at 714.

Furthermore, there must be a "direct causal link between a municipal policy or custom and the alleged constitutional deprivation." *City of Canton*, 489 U.S. at 385. Municipal policy "'causes' an injury where it is the 'moving force' behind the constitutional violation, or where 'the [municipality] itself is the wrongdoer.'" *Chew v. Gates*, 27 F.3d 1432, 1444 (9th Cir. 1994) (citations omitted). The municipal policy "need only cause a constitutional violation; it need not be unconstitutional per se." *Jackson v. Gates*, 975 F.2d 648, 654 (9th Cir. 1992).

Here, the SAC fails to state a Fourteenth Amendment claim against Riverside County because (1) there are no allegations of any Riverside County policy or custom; and (2) there are no allegations from which it reasonably could be inferred that any such Riverside County policy or custom caused Plaintiff's constitutional injuries. *See, e.g., Heard v. Superior Court*, No. 2:20-cv-01589-KJM-CKD, 2020 U.S. Dist. LEXIS 155390, at *8 (E.D. Cal. Aug. 26, 2020) (dismissing *Monell* claim for jail's failure to impose social distancing, use of face masks, and for transfer of plaintiff to dorm where other inmates were not tested because "Plaintiff has not identified any specific county custom or policy that was the moving force for the unsafe jail conditions").

For these reasons, Plaintiff fails to state a Fourteenth Amendment claim against Defendant Bianco in his official capacity. If Plaintiff files an amended complaint with this claim, he must correct its deficiencies or risk its dismissal.

## V.    CONCLUSION

For the reasons stated above, the Court **DISMISSES** the SAC **WITH LEAVE TO AMEND**. Plaintiff may have an opportunity to amend and cure the deficiencies in light of his *pro se* prisoner status. If Plaintiff intends to pursue this matter, he must file a Third Amended Complaint ("TAC") by May 13, 2021.

The TAC must cure the pleading defects discussed above and shall be complete in itself without reference to the SAC. *See* L.R. 15-2 ("Every amended

pleading filed as a matter of right or allowed by order of the Court shall be complete including exhibits.  The amended pleading shall not refer to the prior, superseding pleading.").  This means that Plaintiff must allege and plead any viable claims in the TAC again.  Plaintiff shall not include new defendants or new allegations that are not reasonably related to the claims asserted in the SAC.

In any amended complaint, Plaintiff should confine his allegations to those operative facts supporting each of his claims.  Plaintiff is advised that pursuant to Rule 8, all that is required is a "short and plain statement of the claim showing that the pleader is entitled to relief."  **Plaintiff strongly is encouraged to utilize the standard civil rights complaint form when filing any amended complaint, a copy of which is attached.**  In any amended complaint, Plaintiff should identify the nature of each separate legal claim and make clear what specific factual allegations support each of his separate claims.  Plaintiff strongly is encouraged to keep his statements concise and to omit irrelevant details.  It is not necessary for Plaintiff to cite case law, include legal argument, or attach exhibits at this stage of the litigation. Plaintiff also is advised to omit any claims for which he lacks a sufficient factual basis.

**The Court cautions Plaintiff that failure to timely file a TAC will result in a recommendation that this action be dismissed for failure to prosecute and/or failure to comply with court orders pursuant to Rule 41(b).**

Plaintiff is not required to file an amended complaint, especially since a complaint dismissed for failure to state a claim without leave to amend may count as a "strike" for purposes of the *in forma pauperis* statute, 28 U.S.C. § 1915(g).[4]

---

[4] Inmates who have accumulated three of more "strikes" are not permitted to bring a civil lawsuit or appeal a judgment in a civil action *in forma pauperis*—that is, without prepayment of the filing fee—unless the inmate is under imminent danger of serious physical injury.  *See* 28 U.S.C. § 1915(g).  Instead, inmates with three or more "strikes" generally must pay their full filing fee upfront in order to file a civil lawsuit or appeal a civil judgment.

1   Instead, Plaintiff may request voluntary dismissal of the action pursuant to Federal

2   Rule of Civil Procedure 41(a) using the attached Notice of Voluntary Dismissal

3   form.

4           Plaintiff is advised that the undersigned Magistrate Judge's determination

5   herein that the allegations in the SAC are insufficient to state a particular claim

6   should not be seen as dispositive of the claim.  Accordingly, although the

7   undersigned Magistrate Judge believes Plaintiff has failed to plead sufficient factual

8   matter in the pleading, accepted as true, to state a claim for relief that is plausible on

9   its face, Plaintiff is not required to omit any claim or Defendant in order to pursue

10  this action.  However, if Plaintiff decides to pursue a claim in an amended

11  complaint that the undersigned Magistrate Judge previously found to be

12  insufficient, then, pursuant to 28 U.S.C. § 636, the undersigned Magistrate Judge

13  ultimately may submit to the assigned District Judge a recommendation that such

14  claim may be dismissed with prejudice for failure to state a claim, subject to

15  Plaintiff's right at that time to file objections.  *See* Fed. R. Civ. P. 72(b); C.D. Cal.

16  L.R. 72-3.

17          IT IS SO ORDERED.

18  DATED: April 13, 2021          _____

19                                          MARIA A. AUDERO
                                    UNITED STATES MAGISTRATE JUDGE
20

21  <u>Attachments</u>

22  Form Civil Rights Complaint (CV-66)

23  Form Notice of Dismissal

24

25

26

27

28